# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT MINNESOTA

John Doe,

                Plaintiff,

           v.

University of St. Thomas,

                Defendant.

Civil Action No. 16-cv-1127 (ADM/KMM)

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

## INTRODUCTION

Plaintiff John Doe's ("Plaintiff") Amended Complaint stems from a student disciplinary proceeding conducted by Defendant, University of St. Thomas ("UST"). UST determined that Plaintiff violated UST's Sexual Misconduct Policy by engaging in non-consensual sexual intercourse with another student.  Plaintiff disagrees with UST's determination and brings six counts in an attempt to reverse that determination. Plaintiff's first three counts allege violations of Title IX of the Education Amendments of 1972 (*i.e.*, 20 U.S.C. § 1681, *et seq.*), which prohibits institutions of higher education from discriminating "on the basis of sex."  The remaining three counts are brought pursuant to Minnesota common law.

It is well-settled that "courts should refrain from second-guessing the disciplinary decisions made by school administrators." *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648 (1999).  Disciplinary determinations made by schools, particularly private schools, are owed deference by courts and should be upheld absent legal violations.

Plaintiff's Amended Complaint is devoid of any plausible factual allegation that UST's decision was discriminatory, in violation of a contract, or in violation of Minnesota common law.  Thus, his Amended Complaint must be dismissed.

In Count I, Plaintiff claims that he is entitled to a declaratory judgment that UST's Sexual Misconduct Policy (including its Sexual Misconduct Response and Resolution Procedures) violates a regulatory requirement under Title IX that schools adopt a "prompt and equitable grievance procedure" for addressing complaints of sexual discrimination, including sexual violence.  Doc. 34 ¶ 158-166.  But, the United States Supreme Court has held that Title IX does not create a private cause of action for a university's failure to adopt grievance procedures in accordance with regulations promulgated thereunder.

In Count II, Plaintiff brings a claim for violation of Title IX on the grounds that UST's finding that Plaintiff violated an institutional policy was an erroneous outcome from a flawed proceeding that, according to Plaintiff, "can only be explained by gender bias."   Doc. 34 ¶ 190.   However, Plaintiff has failed to allege the requisite non-conclusory facts sufficient to state a plausible claim that UST intentionally discriminated against Plaintiff because he is a male.

In Count III, Plaintiff alleges that UST allegedly acted with deliberate indifference in response to UST's alleged misconduct in the investigation and adjudication of Jane Doe's sexual misconduct complaint.  Doc. 34 ¶¶ 193-194.  But, deliberate indifference claims under Title IX are reserved for claims that a university failed to adequately respond to a complainant reporting sexual harassment.  Moreover, Plaintiff's failure to

7740389v1

allege specific and non-conclusory facts of intentional sex discrimination is fatal to this claim.

In Count IV, Plaintiff brings a common law breach of contract claim, alleging that UST's Undergraduate Student Policy Book (including UST's Sexual Misconduct Policy) created a contractual relationship between Plaintiff and UST.  Plaintiff alleges that UST breached this contract by its investigation, adjudication, and appellate review of the sexual misconduct complaint made against him.  Doc. 34 ¶¶ 201-202.  However, Minnesota courts are hesitant to find that student handbooks create contractual relationships between a student and institution, and Minnesota law only recognizes the creation of such a contractual relationship if it is alleged that the institution did not act on a specific promise made to the student.  Plaintiff has alleged no specific promise that was made and breached by UST.

In Count V, Plaintiff alleges a common law claim for breach of the covenant of good faith and fair dealing.  Doc. 34 ¶ 205.  The failure of Plaintiff's breach of contract claim dooms this claim.  Moreover, even if a contract existed, a claim for breach of the covenant of good faith and fair dealing cannot be based, as it is in Plaintiff's claim, on the very same conduct as a claim for breach of contract.

In Count VI, Plaintiff asserts a negligence claim:  Plaintiff alleges that "[h]aving put in place a student disciplinary process, including its Policies and Procedures Manual, St. Thomas owed a duty of care to Plaintiff and others to conduct that process in a non-negligent manner and with due care."  Doc. 34 ¶ 209.  Plaintiff alleges that UST breached this duty by failing to act with due care.  *Id.* ¶ 210.  However, Minnesota does not

recognize a cause of action for negligent breach of contract, and Plaintiff's negligence claim is based entirely on the alleged contractual relationship between Plaintiff and UST.

## FACTUAL BACKGROUND[1]

### A.   THE INCIDENT

On December 11, 2015, Plaintiff, then a freshman student at UST, attended an on-campus party.  Doc. 34 ¶¶ 1 & 30.  Plaintiff, Jane Doe, and others left and went to an off-campus party at around 10:30 p.m.  *Id.* ¶¶ 36-40.  After a short period of time, Plaintiff walked Jane Doe back to her dorm.  *Id.* ¶¶ 41-43.  Plaintiff and Jane Doe engaged in consensual kissing in the dorm's common room.  *Id.* ¶¶ 45-46 & 116.  They subsequently wound up in the bathroom connected to Jane Doe's dorm room, but disagree as to how they arrived there and for what purpose.  *Id.* ¶¶ 52-55 & 93-95.  While in the bathroom, Plaintiff penetrated Jane Doe's vagina with his fingers.  Plaintiff acknowledges that he did so.  Jane Doe alleged in two police reports that this was done without her consent and that she was, in fact, sexually assaulted by Plaintiff.  *Id.* ¶¶ 95-97, 107-108 & 112.  Plaintiff does not dispute, and never has disputed, that Plaintiff did not verbally give her consent to that action.  However, Plaintiff claims that Jane Doe did not object to his removal of her pants, and he alleges that Jane Doe had stroked his penis, which he interpreted to be consent to his digital penetration of her.  *Id.* ¶¶ 59-62.

---

[1] For purposes of this motion to dismiss only, UST accepts the factual allegations in Plaintiff's Amended Complaint as true.

**B.**     **UST'S SEXUAL MISCONDUCT POLICY**

**1.**     **The Prohibition of Sexual Misconduct**

UST's Sexual Misconduct Policy prohibits "all forms of sexual misconduct" by students and employees.  *Id.*  It further provides that persons "who are found to have engaged in sexual misconduct prohibited by this policy will be subject to disciplinary action." *Id.* at 2.  The policy supports UST's mission to educate "morally responsible leaders" who "advance the common good."  Grier Dec., Ex. B.  The policy reflects UST's educational judgment of how to create a safe, caring community culture and educational environment that is free from discrimination and sexual misconduct.  Grier Dec., Ex. A at 1.  The policy accounts for the interests of all students, as well as the broader university community.

Under the policy, "sexual misconduct includes sexual harassment, actual or attempted sexual assault, sexual coercion, non-consensual sexual contact, non-consensual sexual intercourse, other forms of sexual assault, sexual exploitation, dating violence, domestic violence, and stalking." *Id.*  "Non-consensual sexual intercourse" is defined as "(1) any sexual intercourse or penetration (anal, oral or vaginal), however slight (2) by a penis, tongue, finger or any object (3) by any person upon any other person (4) without consent and/or by force." *Id.* at 3.  The policy defines "consent" as:

> conduct or words that indicate a person freely agrees to engage in a sexual act at the time of the act, subject to the following:
>
> ☐   In order to give consent, one must be of legal age.
>
> ☐   Consent to one form of sexual activity does not imply consent to other forms of sexual activity.

5

☐ Silence or failing to resist a sexual act does not constitute consent.

☐ A current or previous relationship does not imply consent.

☐ A person who is asleep, unconscious or substantially impaired by drugs, alcohol, disability or other means, or who lacks full knowledge or information of what is happening, cannot consent to a sexual act. This is true regardless whether the person voluntarily or involuntarily consumed the drugs or alcohol.

☐ Use of alcohol or other drugs does not excuse behavior that violates this policy.

☐ Corroboration of a victim's testimony is not required to show lack of consent.

. . .

*Id.*

## 2.  UST's Sexual Misconduct Response and Resolution Procedures

UST's "Sexual Misconduct Response and Resolution Procedures" are set forth in Appendix A to the Sexual Misconduct Policy. While specific processes and procedures are set forth therein, the "provisions are intended to be flexible so as to allow UST to meet its legal obligations while fulfilling its educational mission." *Id.* at 10. Thus, "[t]he Title IX Coordinator may authorize departures from these procedures when warranted by the circumstances." *Id.* For alleged student-to-student misconduct, UST has designated the Dean of Students as the "Response Manager" who is "responsible for timely managing the response and resolution process in accordance with the policy and these procedures."

6

### a.    Determination as to the necessity of interim action

One of the first steps the Response Manager (in this case, the Dean of Students) takes upon receipt of a sexual misconduct complaint is to determine whether any "interim action is necessary or appropriate to protect the parties and the broader UST community pending completion of the response and resolution process."  *Id.* at 11.  These actions could include, *inter alia*, the establishment of a "no contact order," prohibiting the party against whom a complaint was made (*i.e.*, the Respondent) from residing on campus, and prohibiting the Respondent from entering or being present on UST property.  *Id.*

### b.    The appointment of a Process Advisor

In addition to making a determination as to the necessity of interim action, the Response Manager will in the very preliminary stages of the process appoint a "Process Advisor" to both the Complainant and the Respondent.  *Id.*  This Process Advisor will "explain the response and resolution process and provide information about available resources." *Id.*

### c.    UST's formal sexual misconduct resolution process

UST's formal sexual misconduct resolution process is used in cases that involve a complaint of non-consensual sexual intercourse.  *Id.* at 12.  While flexible to the specific circumstances of a case (*see id.* at 10), the formal resolution process generally follows the process set forth herein.

First, upon reviewing a signed complaint of sexual misconduct with the appointed Process Manager, the Response Manager assigns one or more Factfinders who "conduct[]

7

an investigation into the facts of the incident alleged to have occurred, as further described in these procedures . . . ." *Id.* at 13.

The Response Manager next provides separate notice to both the Complainant and the Respondent of the appointment and identity of the Factfinder(s), "an estimate of the time required to complete the investigation, and any other information the Response Manager deems relevant to the particular situation." *Id.* The Response Manager next informs the Respondent "about the Complaint, the allegations made against [him or her], his or her rights, the initiation of a formal investigation . . . [and] any conditions that may affect the Respondent's status as a student or employee . . . ." *Id.*

Following these notices, the Process Advisor holds a meeting with the Respondent to review the allegations made against him or her, to inform the Respondent about available resources, to review UST's Sexual Misconduct Policy and its Response and Resolution Procedures, and to answer any questions the Respondent may have about the process. *Id.* at 13-14.

The Factfinder(s) then undertake an investigation of the alleged misconduct. In doing so, they will conduct appropriate interviews (including of the Complainant and Respondent) and ensure that "the parties have been provided a written summary of all allegations and defenses and have had an opportunity to respond. The opportunity to respond includes: (1) an opportunity to identify relevant witnesses, documentation and other physical evidence; (2) to identify questions that may be asked of witnesses; and (3) to provide responsive written or oral statements." *Id.* at 14.

Upon completion of the investigation, the Factfinder(s) "weigh the evidence and determine whether it is more likely than not (using a 'preponderance of the evidence' standard) that the Respondent is responsible for the misconduct alleged."  If the Factfinder(s) determine the Respondent is responsible, they "will make a determination that the policy has been violated."  The Factfinder(s) will prepare factfinding report, and the Response Manager, in consultation with others, will determine any sanctions to be imposed, depending on the outcome and circumstances.  *Id.*  Notice of the Factfinder(s)'s findings and the sanctions imposed are provided in writing to both the Complainant and Respondent.  *Id.* at 15.

Both the Complainant and the Respondent have an opportunity to appeal the results of the process.  *Id.* at 15-16.

## C.     UST'S INVESTIGATION OF THE INCIDENT

Jane Doe reported the incident to UST Public Safety on December 13, 2015, and to the St. Paul Police Department on December 14, 2015.  Doc. 34-2.  St. Paul police arrested Plaintiff on December 14, 2015.  The Ramsey County attorneys' office ultimately decided not to prosecute.  Doc. 34-5.

Consistent with UST's Sexual Misconduct Response and Resolution Procedures, Plaintiff received from the Dean of Students written notice of the complaint made by Jane Doe.  Doc. 34-6.  This letter included notice of the interim actions that would be taken pending the conclusion of the investigation into Jane Doe's complaint – including, (1) a no contact order applicable to both parties; (2) removal of Plaintiff from his on-campus residence during the response and resolution process; and (3) a prohibition against

9

Plaintiff being on campus except for the purpose of attending classes, taking exams and participating in certain extra-curricular activities.  *Id.*  Plaintiff received a second letter from the Dean of Students on December 15, 2015, advising him generally (among other things) of UST's Sexual Misconduct Response and Resolution Procedures, the identity of the Factfinders assigned to his case, and of Plaintiff's rights during the investigative process including the following:

> A respondent may be accompanied by an advisor during any meeting.  The advisor may be an attorney or any support person.  A process advisor can support you and answer any questions about the process. . . .
>
> In the University's process, both a complainant and a respondent have the right to identify witnesses and provide their statement, along with other information relevant to the investigation.  The University will decide the case based on a preponderance of the information standard (whether or not it is more likely than not that the conduct occurred)."

Doc. 34-7.  A meeting was then held with Plaintiff (and his attorney) to explain Jane Doe's allegations and the process that would be followed.  Doc. 34 ¶¶ 130; Doc. 34-4.

The Factfinders (Vern Klobassa and Dr. Jean Giebenhain) commenced an investigation, during which they interviewed not only Plaintiff and Jane Doe, but also the witnesses identified by Plaintiff.  Doc. 34 ¶¶ 132-142; Doc. 34-8.  Plaintiff further identified additional documentary evidence that he believed supported his case, which the Factfinders reviewed and considered as part of their investigation.  Doc. 34-8.

Upon the conclusion of the investigation, "Plaintiff was informed that he had been found responsible for non-consensual sexual intercourse and would be suspended from St. Thomas immediately, pending his right to file an appeal."  Doc. 34 ¶¶ 144.  Plaintiff initially was suspended for three semesters, until the first day of the Fall 2017 semester.

Doc. 34  ¶¶ 152-153; Doc. 34-10. Plaintiff did appeal, as did Jane Doe who argued for stronger sanctions, and the sanctions against Plaintiff were stayed pending the outcome of the appeal.  Docs. 34-11 & 34-12.  Notably, Plaintiff's appeal did not allege that the decision rendered against him was the result of sex discrimination.  *Id.*

The appeal was considered by a five-member appeal board and decided by an Appeal Officer.  The board found no grounds to change the determination or sanctions. The Appeal Officer upheld the original determination.  Doc. ¶¶ 154-155.  However, the Appeal Officer adjusted the sanction, allowing Plaintiff to complete the current semester under the conditions of the interim sanctions, and extending the suspension period until "the commencement of the Spring semester 2018" in light of the earlier stay and other reasons explained in the appeal outcome letter to Plaintiff.  Doc. 34-12.

## ARGUMENT

## I.    STANDARD OF REVIEW

A complaint need only state "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  However, to survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  This does not require "detailed factual allegations," but it does require that the complaint include sufficient facts to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, the complaint must "raise a reasonable expectation that discovery will reveal evidence of [the claim]."

*Id.* at 556.  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Id.*  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.*  Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.*; *see also Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) ("We do not . . . blindly accept the legal conclusions drawn by the pleader from the facts.").  When reviewing a motion to dismiss, a court may consider matters of public record and other materials "necessarily embraced by the pleadings." *Porous Media Corp. v. Pall. Corp.*, 186 F. 3d 1077, 1079 (8th Cir. 1999).

## II.   PLAINTIFF'S TITLE IX CLAIMS FAIL

Title IX prohibits sex discrimination by colleges and universities.  It provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  The U.S. Department of Education and the courts recognize that sexual harassment of students, including sexual violence, is a form of sex discrimination prohibited by Title IX.  *See Davis*, 526 U.S. at 648; Grier Dec., Ex. C at 1.  To further Congress's goals of "avoiding the use of federal resources to support discriminatory practices" (*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998)), the Department of Education has promulgated regulations requiring schools subject to Title IX to "adopt and publish grievance procedures providing for the prompt and equitable resolution of student and employee complaints alleging any action which would be

12

prohibited." 34 C.F.R. § 106.8(b). The duties of a school to remedy discrimination, including sexual harassment and violence, are distinct from the obligations of law enforcement. The Department of Education has advised schools that "because the standards for criminal investigations are different, police investigations or reports are not determinative of whether sexual harassment or violence violates Title IX. Conduct may constitute unlawful sexual harassment under Title IX even if police do not have sufficient evidence of a criminal violation." Grier Dec., Ex. C at 10.

The Supreme Court has held "that Title IX implies a private right of action to enforce its prohibition on intentional sex discrimination." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005) (citing *Cannon* v. *University of Chicago*, 441 U.S. 677, 690-693 (1979)). "[I]n order to establish a claim of discrimination under Title IX, a plaintiff must ultimately show that the defendant discriminated against him or her *because of sex*; that the discrimination was intentional; and that the discrimination was a 'substantial' or 'motivating factor' for the defendant's actions." *Doe v. Columbia Univ.*, 101 F. Supp. 3d 356, 367 (S.D.N.Y. 2015) (citing *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001)). "It is not enough to show that a policy or practice disproportionately affects one sex." *Id.*

A. **Plaintiff's Count I for Declaratory Relief Fails as a Matter of Law**

Plaintiff's Count I, which seeks a declaratory judgment that UST violated Title's IX's regulatory requirement that schools adopt and publish a prompt and equitable grievance procedure (34 C.F.R. § 106.8(b)), fails to state a claim upon which relief may be granted. The Supreme Court has held that an alleged failure to comply with

13

regulations concerning grievance procedures adopted pursuant to Title IX does not give rise to a private cause of action.  *Gebser*, 524 U.S. at 291-92.  As a matter of law, the absence of a private right of action precludes declaratory relief because "the Declaratory Judgments Act is not an independent source of federal jurisdiction . . . the availability of such relief presupposes the existence of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 679 (1960) (citations omitted). *See also, J. W. Deweit Farms, Inc.*, 393 F. Supp. 2d 847, 852 (D. Minn. 2005) ("The Declaratory Judgment Act is not an independent source of federal jurisdiction."); *Campbell ex rel Equity Units Holders v. Am. Int'l Group, Inc.*, 86 F. Supp. 3d 464, 470-71 (E.D. Va. 2015) (dismissing claim for declaratory judgment where no private right of action to enforce federal regulation at issue, reasoning "[t]he Supreme Court has long 'considered the operation of the Declaratory Judgment Act to be only procedural, leaving substantive rights unchanged.'" (quoting *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S.Ct. 843, 849 (2014)). The "prompt and equitable grievance procedure" requirement of Title IX may be enforced administratively by the Department of Education, but cannot be enforced through a private right of action for monetary damages or declaratory judgment. *See Gebser,* 524 U.S. at 292.

Count I of Plaintiff's Amended Complaint seeks only a declaration that UST's Sexual Misconduct Policy and Procedures were flawed and inadequate in violation of the regulations and guidance adopted by the Department of Education pursuant to Title IX. Count I contains no allegation that UST's Sexual Misconduct Policy and Procedures are

14

intentionally discriminatory. Thus, under well-established federal law, Count I fails as a matter of law.[2]

### B. Plaintiff's Count II for Violation of Title IX Resulting from an Alleged Erroneous Outcome Fails as a Matter of Law

#### 1. A Title IX plaintiff must allege specific and non-conclusory facts giving rise to a plausible inference of gender bias

Plaintiff's Count II fails as a matter of law because Plaintiff has not sufficiently pled facts giving rise to a plausible inference of sex discrimination. Erroneous outcome claims under Title IX are based upon an allegation "that the plaintiff was innocent and wrongly found to have committed an offense" and that "gender bias was a motivating factor behind the erroneous finding." *Yusuf v. Vasar College*, 35 F. 3d 709, 715 (2d Cir. 1994). Thus, to avoid dismissal, a plaintiff must allege not only "particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding," but also "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous findings." *Id.* "Such allegations might include, *inter alia*, statements by members of the disciplinary tribunal, statements by

---

[2] Plaintiff's Amended Complaint contains a smattering of allegations that UST did not follow procedural due process requirements.  UST, as a private university, is not a state actor and thus not subject to a constitutional due process claim. *See United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, AFL-CIO, 954 F.2d 801, 806 (2d Cir. 1992).  Plaintiff's references to "due process requirements of Title IX are misleading because Title IX is an anti-discrimination statute and does not mention due process.  Indeed, "there is no Title IX statutory due process right separate from a right to be free from discrimination." *Cooper v. Gustavus Adolphus*, 957 F. Supp. 191, 194 (D. Minn. 1997).

pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Id.*

Since the Supreme Court's decisions in *Twombly* and *Iqbal*, federal courts throughout the country have adhered to the principle acknowledged in *Yusuf*— namely, that "wholly conclusory allegations [will not] suffice for purposes of Rule 12(b)(6)." *Id.* The pronouncement of the current state of the law as set forth in *Columbia University* is instructive:

> First, the court must distinguish between facts, on the one hand, and "mere conclusory statements" or legal conclusions on the other hand; the latter are not entitled to the presumption of truth and must be disregarded. Second, the court must "consider the factual allegations [in the complaint] to determine if they plausibly suggest an entitlement to relief." A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." A plaintiff must show "more than a sheer possibility that a defendant acted unlawfully," and cannot rely on mere "labels and conclusions" to support a claim. If the plaintiff's pleadings have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed."

*Columbia Univ.*, 101 F. Supp. 3d at 365-66 (citing *Iqbal*, 556 U.S. at 678-79 and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Thus, courts around the country have consistently held that "allegations of a procedurally or otherwise flawed proceeding that has led to an . . . erroneous outcome combined with a conclusory allegation of gender discrimination' will not withstand scrutiny" on a motion to dismiss. *Id.* at 368 (quoting *Yusuf*, 35 F.3d at 715 and dismissing Title IX claim). *See also Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 756 (E.D. Tenn. 2009) (holding that plaintiff failed to plead "that the outcome of the University's

16

disciplinary proceeding was erroneous because of a sexual bias" and dismissing claim); *Sahm v. Miami Univ.*, 110 F. Supp. 3d 774, 778 (S.D. Ohio 2015) (holding that plaintiff failed to plausibly plead "a causal connection between the flawed outcome and gender bias" and dismissing Title IX claim); *Doe I et al. v. Univ. of Cincinnati*, No. 1:15-CV-681, 2016 WL 1161935, at *14 (S.D. Ohio March 23, 2016) ("[U]nder any theory, Plaintiffs must still allege facts sufficient to conclude that [the university]'s conduct was motivated by gender bias" and plaintiffs failure to do so required dismissal of claim); *Salau v. Denton*, No. 2:14-cv-04326, 2015 WL 5885641, at *3 (W.D. Mo. Oct. 8, 2015) (plaintiff failed to "sufficiently plead[] causation by alleging particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding" requiring dismissal of claim) (internal quotation and citation omitted); *Doe v. Case Western Reserve Univ.*, No. 1:14CV2044, 2015 WL 5533001, at *4 (ND. Ohio Sept. 16, 2015) ("[A] plaintiff must demonstrate that the educational institution's challenged misconduct was motivated by sex-based discrimination," and dismissing Title IX claim for failure to so plead); *Doe v. Univ. of Mass.-Amherst*, No. 14-30143, 2015 WL 4306521, at *8 (D. Mass. July 14, 2015) (allegations "insufficient to suggest that the disparate treatment was *because* of Plaintiff's sex" requiring dismissal of claim) (internal quotation and citation omitted); *Blank v. Knox College*, No. 14-cv-1386, 2015 WL 328602, at *3 (C.D. Ill. Jan. 26, 2015) (dismissing claim because plaintiff failed to allege "circumstances suggesting that gender bias was a motivating factor behind the erroneous finding") (internal quotation and citation omitted); and *Harris v. St. Joseph's Univ.*, No. 13-3937, 2014 WL 1910242, at *4 (E.D. Pa. May 13, 2014) (dismissing claim because

17

"[w]hen a plaintiff claims a flawed outcome, he must allege, among other things, particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding" and plaintiff failed to do so) (internal quotation and citation omitted). And, notably, a "[p]laintiff's subjective belief that he was the victim of discrimination — however strongly felt — is insufficient to satisfy his burden at the pleading stage." *Columbia Univ.*, 101 F. Supp. 3d at 371 (citations omitted).

Put simply, absent the pleading of specific, non-conclusory facts "suggesting that gender bias was a motivating factor behind the erroneous finding," Plaintiff's Title IX claim based upon an alleged erroneous proceeding must be dismissed.

> **2. The Amended Complaint does not allege specific, non-conclusory facts giving rise to a plausible inference that UST made its determination of Plaintiff's responsibility *because of* his sex[3]**

Plaintiff's allegations of discrimination are conclusory and thus insufficient to give rise to a plausible inference of discrimination. At base, Plaintiff alleges that: (1) because of federal pronouncements and policies, UST faces pressure "to treat male students accused of sexual misconduct with a presumption of guilt and to simply punish the male students" accused of sexual misconduct to avoid negative publicity and a loss of federal funds; (2) UST's actions "represent[] disparate treatment of Plaintiff by [UST] on the basis of his sex" and "can only be explained by gender bias against males in cases

---

[3] UST does not concede that Plaintiff has pleaded sufficient factual allegations to create a plausible question as to whether the proceeding was flawed and reached an erroneous result. But, Plaintiff has made only conclusory and non-specific allegations of gender bias and his claim can and must be dismissed for this reason alone.

18

involving allegations of sexual assault"; (3) "in all, or in virtually all, cases of campus sexual misconduct at St. Thomas, the accused student is male and the accusing student is female . . . and [UST] impermissibly presumes male students 'guilty until proven innocent' based on invidious gender stereotypes"; (4) UST treated Plaintiff and Jane Doe differently in the investigation of Jane Doe's complaint; and (5) UST permitted an in-house attorney to perform functions of a Title IX Coordinator. *See* Doc. 34 ¶¶ 11, 13, 171-91, 195-96, and 201.

Plaintiff's allegations are insufficient to withstand dismissal. Notably, Plaintiff does not allege "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender."[4] *Yusuf*, 35 F. 3d at 715 (2d Cir. 1994). And Plaintiff's conclusory allegations are insufficient to state a plausible claim that any alleged erroneous outcome was reached *because* of Plaintiff's sex.  *See Columbia University*, 101 F. Supp. 3d at 370-71 (dismissing claim and noting plaintiff's failure to plead "any non-conclusory factual allegations giving rise to a plausible inference that the erroneous outcome was motivated by Plaintiff's sex.").  *See also Salau*, 2015 WL 5885641, at *4 (plaintiff's conclusory allegations "devoid of further factual enhancement are insufficient to state a claim to relief in a pleading") (internal quotation and citation omitted); *Case Western Reserve Univ.*, 2015 WL 5533001, at *5 ("reli[ance] on conclusory statements in an effort to

---

[4] Plaintiff alleges that the process followed in the investigation and adjudication of the complaint against him reflected "patterns of decision making by [UST] throughout the entire process . . . .." But, one case is not enough to show a "pattern of decision making." *See Salau*, 2015 WL 55885641, at *4.

establish a plausible claim that [university] was motivated by sexual bias in arriving at an erroneous finding" insufficient to withstand dismissal); *Univ. of Mass.-Amherst*, 2015 WL 4306521, at *9 ("In the absence of specific factual allegations from which a factfinder could plausibly infer the influence of gender bias on the outcome of Plaintiff's disciplinary proceeding, that portion of his Title IX claim is dismissed."); *Blank*, 2015 WL 328602, at *3 ("Taking everything in the Amended Complaint as true, Plaintiff has not provided enough factual allegations to allow one to plausibly conclude that Defendant either disallowed Plaintiff from presenting some of his evidence or believed his accusers over Plaintiff due to his sex, or the sex of his accusers."); *Harris*, 2014 WL 1910242, at *4 ("Conclusory allegations are insufficient to survive a motion to dismiss.").

> a.   In the absence of specific and non-conclusory factual allegations, Plaintiff's allegation that UST "treat[s] male students accused of sexual misconduct with a presumption of guilt" does not give rise to a plausible claim of sex discrimination

Paragraphs 11, 13, and 175-179 of Plaintiff's Amended Complaint allege that UST engaged in a policy and practice of discriminating against male students accused of sexual misconduct, treating them with a presumption of guilt.  Plaintiff bases this allegation not on any specific factual circumstances or allegations, but rather on presumed and alleged pressure from the federal government.  But, if taken as true that the federal government is pressuring UST and other universities to take allegations of sexual misconduct seriously, the allegation applies with equal force to complaints of sexual misconduct made against females.  Grier Dec., Ex. D at p. 5, Answer B-2.

Thus, at best, Plaintiff's allegations can be accepted to mean that due to federal pressures, UST is biased in favor of alleged victims of sexual assault and against alleged perpetrators. But, such an allegation "is not the equivalent of demonstrating bias against male students." *Sahm*, 110 F. Supp. 3d at 778. And courts around the country have thus held that allegations supporting a claim that a university is biased in favor of alleged victims of sexual assault and against alleged perpetrators cannot give rise to a plausible inference of sex discrimination. *See id.*; *Columbia Univ.*, 101 F. Supp. 3d at 371; *Salau*, 2015 WL 5885641, at *3; and *Univ. of Cincinnati*, 2016 WL 1161935, at *14.

> b.   Plaintiff's allegation that UST's procedure and the alleged erroneous outcome must result in a *per se* determination of sex discrimination is contrary to law

Paragraphs 171, 174, 180, and 191 allege that UST's conduct in its investigation and adjudication of Jane Doe's complaint and its ultimate decision "can only be explained by gender bias and an improper process." However, Plaintiff does not elaborate or make specific factual allegations explaining why this could be the only explanation. Instead, Plaintiff suggests that the mere fact that UST rendered an allegedly erroneous decision is enough to demonstrate a violation of Title IX. Relevant case law has held exactly the opposite. As the court recognized in *Columbia University*, "there [are] 'many possible explanations for [a school's conduct], among them time constraints, laziness, or just that it was standard procedure [to so act].'" 101 F. Supp. 3d at 371 (quoting *Brown v. Castleton State Coll.*, 663 F. Supp. 2d 392, 403 (D. Vt. 2009)). Thus, as the court held in in *Case Western Reserve University*, while a plaintiff's allegations of procedural defects "may call into question the outcome of the proceedings, they are not

21

factual allegations supporting the conclusion that the procedural flaws and hostility towards Plaintiff were motivated by sexual bias." 2015 WL 5522001 at *5; *see also Univ. of Cincinnati*, 2016 WL 1161935 at *14 ("Plaintiffs' complaint does not, for instance, allege facts linking UC's decision to limit cross-examination to gender bias. Consequently, the complaint fails to create a reasonable inference that the disciplinary hearing procedures adopted by UC were motivated by a desire to discriminate against male students."); *Blank*, 2015 WL 328602 ("[N]othing in the Amended Complaint shines any light on 'how the several decisions of the board' were motivated by gender bias, as opposed to being gender-neutral acts of simple procedural discretion"). Put simply, an allegation that a university reached an erroneous outcome due to a flawed process is not enough to give rise to a plausible inference that the university reached such an erroneous outcome *because of* the plaintiff's sex.

> c.  Plaintiff's conclusory allegation that nearly all allegations of sexual misconduct are made against males by females does not give rise to a plausible inference of sex discrimination

Plaintiff alleges in paragraph 175 that, on information and belief, in all, or virtually all, cases of campus sexual misconduct at St. Thomas, the accused student is male and the accusing student is female, and that UST "impermissibly presumes male students 'guilty until proven innocent'." Plaintiff further alleges that UST "has codified this policy by requiring no corroboration by victims." Even taken as true, these allegations do not give rise to a plausible inference that gender bias was a motivating factor in UST's decision with respect to Plaintiff.

First, while the allegation alleges a disparity among the sex of those accused of sexual misconduct, the allegations of discriminatory treatment are wholly conclusory and thus insufficient to avoid dismissal. *See, e.g.*, *Univ. of Massachusetts-Amherst*, 2015 WL 4306521 at *9 ("Though he asserts that 'male respondents in sexual misconduct cases at [the University] are discriminated against solely on the basis of sex' and are 'invariably found guilty, regardless of the evidence or lack thereof[,]' these statements are unsupported by even minimal data or credible anecdotal references; they are the type of conclusory statements that *Iqbal* and *Twombly* do not allow the court to consider."); *Univ. of Cincinnati*, 2016 WL 1161935, at *15 (bare allegation that "males charged with sexual misconduct are invariably found responsible for the violation" not enough to "plausibly infer that the results of Plaintiffs' disciplinary hearings were affected by gender discrimination"). And, notably, Plaintiff has not identified or alleged any circumstance in which a female accused of sexual misconduct was treated more favorably by UST due to her sex. *See Sahm*, 110 F. Supp. 3d at 779 ("Sahm asserts no facts to suggest that [Title IX officer] would have treated a female accused of sexual assault any differently in her investigation or that the University would have acted differently in a disciplinary procedure against a female accused of sexual assault.").

Second, a statistical disparity in the number of sex offenses committed by males and females provides a more plausible non-discriminatory reason for this alleged disparate reporting. *See, e.g.*, *Univ. of Cincinnati*, 2016 WL 1161935 at *14 ("There are, however, at least two related non-discriminatory reasons for the disparity between males

23

and females in sexual misconduct disciplinary cases: 1) UC has only received complaints of male-on-female sexual assault; and 2) males are less likely to report sexual assaults.").

Finally, Plaintiff's allegation that UST has codified a policy requiring no corroboration from victims does not give rise to a plausible inference of discrimination. The language to which Plaintiff is referring is one aspect of the definition of "consent" under UST's Sexual Misconduct Policy (Grier Dec., Ex. A at 3), and reflects principles contained in the definition of "consent" under Minnesota law. Minn. Stat. § 609.341 subd. 4(c) (2015) ("Corroboration of the victim's testimony is not required to show lack of consent." ). *See also* Minn. Stat. 609.347, subd. 1 (in criminal sexual misconduct cases, "the testimony of the victim need not be corroborated."). While UST's Sexual Misconduct Policy establishes and enforces UST's community standards, not Minnesota criminal law, the fact that UST's policy language is consistent with Minnesota law belies any inference that this policy language demonstrates intentional sex discrimination. *See also Univ. of Massachusetts-Amherst*, 2015 WL 4306521 at *9 ("Plaintiff's suggestion that bias is evidenced because the Student Conduct Hearing Board credited Jane Doe's testimony rather than his own ignores the fact that the standard of proof used was the 'preponderance of the evidence' standard.").

> d.    UST's alleged more favorable treatment of Jane Doe does not give rise to an inference of sex discrimination against Plaintiff

Plaintiff further alleges in paragraph 174 that Jane Doe was not subject to the same scrutiny in UST's investigation as Plaintiff was, and that this suggests "gender bias against males."   But, this allegation is insufficient to give rise to an inference of

24

discrimination, because it is not discriminatory for investigators to treat alleged victims of sexual assault differently than the accused. As the court held in *Doe v. Columbia University*:

> [W]hile Columbia may well have treated Jane Doe more favorably than Plaintiff during the disciplinary process, the mere fact that Plaintiff is male and Jane Doe is female does not suggest that the disparate treatment was *because of* Plaintiff's sex. Indeed, the alleged treatment "'could equally have been'" — and more plausibly was — "'prompted by lawful, independent goals,'" such as a desire (enhanced, perhaps, by the fear of negative publicity or Title IX liability to the victims of sexual assault) to take allegations of rape on campus seriously and to treat complainants with a high degree of sensitivity. *Twombly*, 550 U.S. at 567 (quoting *Kramer v. Pollock-Krasner Foundation*, 890 F. Supp. 250, 256 (S.D.N.Y. 1995)). In other words, the disparate treatment of Plaintiff and Jane Doe "is merely consistent with the defendants' liability, and hardly establishes a plausible inference of discrimination." *Pungitore*, 506 F. App'x at 43 (citation omitted)

101 F. Supp. 3d at 371-72. Likewise here, UST's alleged more favorable treatment of Jane Doe can be explained "by lawful independent goals . . . such as a desire . . . to take allegations of rape on campus seriously and to treat complainants with a high degree of sensitivity. . . ." *Id.*

> e.     Plaintiff's allegations regarding the role of the Title IX Coordinator do not give rise to a plausible inference of sex discrimination

Finally, Plaintiff's allegations that UST's Associate General Counsel impermissibly assumed the role of Title IX Coordinator, even if taken as true,[5] does not demonstrate gender discrimination. The regulatory requirement that higher education

---

[5] As discussed, *infra* pp. 34-35, this is allegation is contrary to the exhibits attached to Plaintiff's Amended Complaint.

institutions designate a Title IX Coordinator to "coordinate its efforts to comply with [Title IX]" is part of the same regulation that requires institutions to adopt a prompt and equitable grievance procedure. *See* 34. C.F.R. § 106.8. The Supreme Court has held that a failure to follow such an administrative requirement does not demonstrate discrimination under Title IX. *See Gebser*, 524 U.S. at 292.

There is an implied private right of action under Title IX to remedy intentional discrimination. To state a claim under Title IX, Plaintiff must allege sufficient *facts* to support a plausible inference that UST's decision was motivated by intentional sex discrimination. Because Plaintiff's Amended Complaint fails to allege specific facts to state a plausible claim that UST's alleged erroneous outcome was reached *because of* Plaintiff's sex, Count II must be dismissed.

### C.     Plaintiff's Count III for Violation of Title IX Resulting from Alleged Deliberate Indifference Fails as a Matter of Law

Plaintiff also fails to state a Title IX claim for deliberate indifference. Under *Gebser,* a school can be liable under Title IX for sexual harassment by a teacher against a student only where the school has actual knowledge of the harassment and acts deliberately indifferent to such harassment. *Gebser,* 524 U.S. at 290-91. Similarly, the Supreme Court has held that a school may be liable under Title IX for their deliberate indifference to known acts of peer harassment. *See Davis*, 526 U.S. at 648. In *University of the South*, the court explained Title IX's deliberate indifference standard as follows:

> Under the "deliberate indifference" standard, Plaintiffs have the burden to "demonstrate that an official of the institution who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct." *Mallory*, 76 Fed. Appx. at 638. The "deliberate

26

indifference" standard must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it. *Patterson v. Hudson Area Schs.*, 551 F.3d 438, 446 (6th Cir. 2009). "[A] Plaintiff may demonstrate a defendant's deliberate indifference to discrimination 'only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id.* (internal citation omitted).

687 F. Supp. 2d at 757.  Thus, the court dismissed plaintiff's "deliberate indifference" claim regarding the handling of a sexual assault complaint made against him because "[t]he facts pled by Plaintiffs [ ] do not contain the critical component of any Title IX claim necessary to make a finding under the deliberate indifference standard, namely that the University's alleged actions constituted sexual harassment." *Id.* at 757-58.  *See also Univ. of Cincinnati*, 2016 WL 1161935 at *13 ("A 'deliberate indifference' claim seems for the most part to be limited to sexual harassment cases."); *Marshall v. Ohio Univ.*, 2015 WL 1179955, at *8 (S.D. Ohio Mar. 13, 2015) ("It is unclear as to how exactly this claim applies to the facts of this case, as usually this claim is asserted by a victim against a school university official who *failed* to protect him or her from harassment or otherwise address the alleged misconduct-actions that OU officials undisputedly took, to *protect* the alleged victim *from* Marshall.").

Like the above-cited cases, Plaintiff's Amended Complaint does not involve allegations of sexual harassment, but rather involves allegations that UST mishandled the investigation and adjudication of Jane Doe's sexual assault complaint. Because these are not the type of allegations for which a Title IX claim for deliberate indifference can be brought, Count III fails as a matter of law.

27

Nevertheless, even if Plaintiff could as a legal matter bring a claim for "deliberate indifference" under Title IX, his Count III fails to state a plausible claim for relief.  As with Count II, Count III contains no specific factual allegation that UST acted deliberately indifferent to alleged misconduct *because of* Plaintiff's sex. *See Case Western Reserve Univ.*, 2015 WL 5522001 at *7 ("Further, to state a claim for relief under Title IX's deliberate indifference standard, Plaintiff is required to make factual allegations that support an inference that [the University]'s refusal to rectify procedural defects was motivated by sex-based discrimination.").  Indeed, Plaintiff's Count III alleges only in conclusory fashion that "[t]his failure and refusal can only be explained by gender bias against males, as set forth above." Doc. 34 ¶ 195. But, as discussed above, this is woefully insufficient to state a plausible claim for sex-based discrimination.

Moreover, regardless of the lack of specific non-conclusory allegations of sex-based discrimination, Plaintiff has failed to state a plausible claim for deliberate indifference under Title IX.  As the Eighth Circuit Court of Appeals stated in *Roe v. St. Louis University*, 746 F.3d 874 (8th Cir. 2014), "to prove Title IX liability under a deliberate indifference standard, a plaintiff must show that the university was '(1) deliberately indifferent (2) to known acts of discrimination (3) which occur[red] under its control.'" *Id.* at 882 (quoting *Ostrander v. Duggan*, 341 F.3d 745, 750 (8th Cir. 2003)).  Plaintiff's Amended Complaint is completely devoid of any specific factual allegation that UST was (1) actually aware of alleged discrimination against Plaintiff, (2) occurring

28

under its control, and (3) deliberately acted indifferent to such discrimination.[6] Instead, Plaintiff's Amended Complaint (*see* Doc. 34 ¶¶ 193-194) contains only "a formulaic recitation of the elements of [the] cause of action" which is "devoid of further factual enhancement." *Twombly*, 550 U.S. at 555. Thus, even assuming that Plaintiff could bring a claim for deliberate indifference under Title IX, Count III fails to state a claim upon which relief can be granted.

## III.    PLAINTIFF'S COMMON LAW CLAIMS FAIL

### A.    Plaintiff Has Failed to Allege the Existence of a Contractual Relationship, and Plaintiff's Claim for Breach of Contract Therefore Fails

The Minnesota Supreme Court has held that while "[e]lements of the law of contracts have been applied to the student-university relationship, [ ] rigid importation of contractual doctrine has been rejected." *Abbariao v. Hamline Univ. School of Law*, 250 N.W.2d 100, 113 (Minn. 1977) (finding school bulletin did not create contractual relationship with student). Thus, in Minnesota, "a student may bring an action against an educational institution for breach of contract, fraud, or misrepresentation, if it is alleged that the institution failed to perform on specific promises it made to the student and the claim would not involve an inquiry into the nuances of educational processes and theories." *Alsides v. Brown Institute, Ltd.*, 592 N.W.2d 468, 473 (Minn. Ct. App. 1999) (internal quotation and citation omitted). *See also Clem v. St. Mary's Univ. of Minn.*, No. A09-1231, 2010 WL 773596, at *3 (Minn. Ct. App. Mar. 9, 2010) ("A breach-of-

---

[6] Notably, Plaintiff's appeal letter contains no allegation that UST's decision was discriminatory. (Doc. 34-11).

educational-contract claim can only survive if the institution failed to perform on a *specific* promise that it made to the student.").

Not surprisingly, then, "Minnesota courts are generally reluctant to find contractual obligations between students and their schools based upon student handbooks." *Rolling v. Cardinal Stritch Univ.*, 626 N.W.2d 464, 470 (Minn. Ct. App. 2001) (finding student handbook and conduct code's disciplinary procedures did not create contract between school and student and, even if it did, school substantially complied with procedures so there was no breach); *see also Schumacher v. Argosy Educ. Group, Inc.*, No. 05-531, 2006 WL 3511795, at *13 (D. Minn. Dec. 6, 2006) (finding student handbook did not create contractual relationship between school and student for lack of specific promise that was breached, noting "Handbook's list of graduation requirements specifically states that '[t]he School retains the right to modify these requirements in accordance with the demands of the profession of psychology'"); *Redden v. Minneapolis Comm. & Tech. College*, No. A03-1202, 2004 WL 835768, at *5 (Minn. Ct. App. April 20, 2004) ("A student handbook or bulletin does not form a unilateral contract between the university and the student requiring strict compliance with every provision."); *Gebreemeskel v. Univ. of Minnesota*, No. C9-02-183, 2002 WL 1611336, at *3 (Minn. Ct. App. July 23, 2002) (dismissing for failure to state a claim breach of contract action brought based on student handbook holding plaintiff "fails to allege what terms of an express contract the university breached.").

Plaintiff relies solely on the UST Undergraduate Student Policy Book and Sexual Misconduct Policy to allege the existence of a contractual relationship between himself

and UST. But, even after a 10-page recitation of the Sexual Misconduct Policy, Plaintiff fails to identify any *specific* promise contained therein that UST failed to perform in its investigation and adjudication of Jane Doe's sexual assault complaint. Indeed, the Sexual Misconduct Policy upon which Plaintiff relies expressly provides that its "provisions are intended to be flexible so as to allow UST to meet its legal obligations while fulfilling its educational mission," and may be departed from "when warranted by the circumstances." Grier Dec., Ex. A at 10. Plaintiff's failure to identify a specific promise in the Sexual Misconduct Policy that was not performed by UST is not surprising, as the facts set forth *supra* pp. 5-11 demonstrate, UST followed its processes and procedures in investigating and adjudicating Jane Doe's sexual assault complaint.

Because Plaintiff has not alleged and cannot allege a *specific* promise made to him by UST that UST failed to perform, no contractual relationship exists. Plaintiff's breach of contract claim thus fails as a matter of law.

### B.   Plaintiff's Breach of the Covenant of Good Faith and Fair Dealing Claim Fails

"[A] cause of action for breach of the duty of good faith and fair dealing cannot exist independent of an underlying breach of contract claim." *H. Enters, Intl, Inc. v. Gen. Elec. Capital Corp.*, 833 F. Supp. 1405, 1420 (D. Minn. 1993) (citations omitted); *see also Minnwest Bank Cent. v. Flagship Props. LLC*, 689 N.W.2d 295, 303 (Minn. Ct. App. 2004) (bank's refusal to grant long-term financing did not violate duty of good faith because bank had no contractual duty to grant financing and did not unjustifiably frustrate plaintiff's performance under contract). Thus, Plaintiff's claim for breach of the

covenant of good faith and fair dealing is dependent on the existence of a contract, and because Plaintiff has failed to demonstrate the existence of a contract, his claim for breach of the covenant of good faith and fair dealing likewise fails.

Moreover, even if there was a contract, Plaintiff's claim fails.  While Minnesota law recognizes in every contract "an implied covenant of good faith and fair dealing requiring that one party not 'unjustifiably hinder' the other party's performance of the contract," Plaintiff makes no allegation that UST unjustifiably hindered his performance of the alleged contract.  *Hennepin Cnty. 1986 Recycling Bond Litigation*, 540 N.W.2d 494, 502 (Minn. 1995).  And "Minnesota law does not recognize a separate cause of action for breach of the implied covenant of good faith when it arises from the same conduct as a breach-of-contract claim."  *Seren Innovations, Inc. v. Transcon Ins, Co.*, No. A05-917, 2006 WL 1390262, at *8 (Minn. Ct. App. May 23, 2006) (citing *Wild v. Rarig*, 234 N.W.2d 75, 790 (Minn. 1975)).  Both Plaintiff's breach of contract claim and breach of the covenant of good faith and fair dealing claim are based on the exact same alleged misconduct – namely, UST's alleged failure to properly investigate and adjudicate Jane Doe's sexual misconduct complaint in accordance with its Sexual Misconduct Policy. Doc. 34 ¶¶ 201 and 205-206.  Thus, even if Plaintiff's breach of contract claim could survive dismissal, his breach of the covenant of good faith and fair dealing claim must be dismissed.

C.    **Plaintiff's Negligence Claim Based on the Alleged Breach of Contractual Duties Fails**

To sustain a claim for negligence, a plaintiff must prove the existence of four elements: "(1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) that the breach of the duty of care was a proximate cause of the injury." *Glorvigen v. Cirrus Design Corp.*, 816 N.W.2d 572, 581-82 (Minn. 2012). "'[W]hen a contract provides the only source of duties between the parties, Minnesota law does not permit the breach of those duties to support a cause of action in negligence."' *Id.* at 584 (quoting *United States v. Johnson*, 853 F.2d 619, 622 (8th Cir. 1988)). Likewise in *D & A Dev. Co. v. Butler*, the Minnesota Court of Appeals held that "[t]o prevail in negligence, a plaintiff must prove as one element that the defendant breached 'some duty imposed by law, not merely one imposed by contract.'" 357 N.W.2d 156, 158 (Minn. Ct. App. 1984) (quoting *Keiper v. Anderson*, 138 Minn. 392, 398, 165 N.W. 237, 238 (1917)).

Plaintiff's negligence claim is based on UST's alleged failure to conduct its disciplinary process under its policies and procedures – *i.e.*, its Sexual Misconduct Policy, inclusive of its Response and Resolution Procedures – in a non-negligent manner. Doc. 34 ¶¶ 209-210.  In other words, Plaintiff alleges that UST failed to perform what Plaintiff alleges to be its contractual obligations in a non-negligent manner.  Minnesota recognizes no such claim for negligent breach of contract. *Lesmeister v. Dilly*, 330 N.W.2d 95, 102 (Minn. 1983).

Moreover, even assuming Plaintiff could establish a duty on the part of UST that would give rise to a negligence claim, Plaintiff's negligence claim fails because he has

not alleged specific facts sufficient to give rise to a plausible claim that any such duty was breached. Indeed, Plaintiff only alleges in conclusory fashion that "[t]he conduct of St. Thomas and its agents, including Crouse, fell below the applicable standard of care and amounted to breaches of the duty of care and competence." Doc. 34 ¶ 210. This conclusory statement is insufficient to withstand dismissal.

The only arguable factual allegation regarding an alleged breach of a duty of due care is that UST "allowe[ed] the purportedly fair proceeding to be directed by an individual acting in both the roles of Title IX Coordinator and general counsel." *Id.* But, as noted above, the requirement that institutions appoint a Title IX Coordinator is not an obligation giving rise to a private cause of action. And Plaintiff cannot circumvent the lack of a private Title IX claim through the use of a common law action alleging a breach of Title IX's administrative regulations. *See Ross v. Univ. of Tulsa,* No. 14-CV-484, 2015 WL 4064754(N. D. Ok. July 2, 2015) (alleged violations of Title IX and implementing regulations cannot support a state law negligence claim). Moreover, this allegation is inconsistent with the supporting exhibits Plaintiff attaches to his Amended Complaint.

First, the University's Sexual Misconduct Policy identifies Nora Fitzpatrick as the Title IX Coordinator. Doc. 34-1 at 13. Second, in a December 15, 2015 letter to Plaintiff, the UST Dean of Students explained that UST "has a Title IX Officer who can help explain the University's responsibilities in these cases" and identified Ms. Fitzpatrick as the Title IX officer, providing her contact information. Doc. 34-7.

34

Additionally, Plaintiff misinterprets the responsibilities of a Title IX Coordinator under applicable federal regulations. As the 2011 Dear Colleague letter states:

> The Title IX regulations require a recipient to notify all students and employees of the name or title and contact information of the person designated to coordinate the recipient's compliance with Title IX. The coordinator's responsibilities include overseeing all Title IX complaints and identifying and addressing any patterns or systemic problems that arise during the review of such complaints.

Grier Dec., Ex. C at 7.  Plaintiff's allegations that UST's attorney was the main contact for Plaintiff's attorney, and that UST's attorney provided legal advice to the institution (Doc. 34 ¶ 187), do not support his allegation that UST's attorney usurped the oversight and coordination role of the Title IX Coordinator. Finally, while the Department of Education guidance in the Dear Colleague Letter indicates that a general counsel "may" have a conflict of interest that prevents him or her from serving as Title IX Coordinator, it discourages, but does not prohibit, the practice. *Id.* at 7.  Moreover, the Dear Colleague letter is agency guidance – it is not intended to have the force and effect of law.  *Moore v. Regents of the Univ. of Cal.*  No. 15-CV-05779, 2016 WL 2961984, at *5 (N. D. Cal. May 23, 2016).

For all of the foregoing reasons, Plaintiff's negligence claim must be dismissed.

## CONCLUSION

Following an investigation, UST made a determination that Plaintiff violated an institutional policy. While Plaintiff disagrees with UST's decision, Plaintiff does not allege facts that plausibly demonstrate that the UST's decision was discriminatory or

otherwise in violation of any law. As a result, Plaintiff's Amended Complaint must be dismissed.

Dated: June 6, 2016

**BRIGGS AND MORGAN, P.A.**

By:  s/Maren F. Grier
David A. Schooler (#0225782)
Ellen A. Brinkman (#0386578)
Maren F. Grier (#390221)
Michael M. Sawers (#0392437)
2200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402-2157
(612) 977-8400

**ATTORNEYS FOR DEFENDANT
UNIVERSITY OF ST. THOMAS,
MINNESOTA**

7740389v1