**IN THE UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

JOHN DOE,

          Plaintiff,

v.

UNIVERSITY OF ST. THOMAS,

          Defendant.

CASE No. 16-cv-1127 (JRT/DTS)

**DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION TO  COMPEL**

## INTRODUCTION

On March 1, 2017, the Court significantly narrowed the scope of Plaintiff John Doe's ("Plaintiff") case. Specifically, in an Order on Defendant University of St. Thomas's ("UST") motion to dismiss, the Court dismissed Plaintiff's Title IX and contractual claims from this lawsuit. All that remains, then, is Plaintiff's negligence claim – *i.e.*, Plaintiff's claim that UST breached its alleged duty to conduct the investigation, adjudication, and appeal of the sexual misconduct claim against him with due care. The motion before this Court seeks documents and information far beyond the scope of relevance for this sole remaining claim. Because Plaintiff cannot satisfy the requisite threshold showing of relevance, his motion to compel must be denied.

## RELEVANT FACTUAL BACKGROUND

### A.    THE NARROW SCOPE OF PLAINTIFF'S SURVIVING CLAIM

Plaintiff John Doe ("Plaintiff") initiated this action against Defendant University of St. Thomas ("UST") on April 29, 2016. Doc. 1. Plaintiff's First Amended Complaint

1

asserted against UST six claims, all of which stemmed from UST's determination that Plaintiff was responsible for a violation of its Sexual Misconduct Policy. *See generally* Doc. 34. Three of Plaintiff's claims were brought pursuant to Title IX of the Education Amendments of 1972 and broadly alleged that UST discriminated against Plaintiff "because of his sex." *Id.* Two of Plaintiff's claims alleged breach of contractual duties. *Id.* Plaintiff's final claim was one for negligence and alleged that, "[h]aving put in place a student disciplinary process, including the policies and procedures manual, St. Thomas owed a duty of care to plaintiff and others to conduct that process in a non-negligent manner and with due care," and that UST breached that alleged duty. Doc. 34 ¶¶ 209-210

On March 1, 2017, the Court issued its Order granting in part and denying in part UST's motion to dismiss. Doc. 63. In that Order, the Court dismissed all three of Plaintiff's Title IX claims. In doing so, the Court held that, among other things, Plaintiff failed to "plausibly allege circumstances suggesting gender bias motivated UST's disciplinary proceeding." Doc. 63 at 9-10. The Court also dismissed Plaintiff's breach of contract claims. The Court denied UST's motion to dismiss Plaintiff's negligence claim, but in doing so held that while it was "skeptical that the facts underlying this case will ultimately establish a duty of care, a factual record must be developed to assess whether a duty exists." Doc. 63 at 20. Thus, following the March 1, 2017 Order, all that remains in this case is Plaintiff's negligence claim.

In other words, what remains in this case is not a question of whether UST violated Title IX and discriminated against Plaintiff "because of his sex," but rather (1) whether Defendant had a duty in tort to Plaintiff with respect to the complaint against

2

him and the investigation of the complaint against him, (2) the scope of any such duty, and (3) whether any such duty was breached. The two document requests that are the subject of Plaintiff's motion seek to expand this case far beyond its remaining narrow scope.

## B.   PLAINTIFF'S MOTION TO COMPEL AND HIS ALLEGED BASES THEREFOR

In his motion to compel papers, Plaintiff paints a misleading and incomplete picture of the course of discovery in this case. In the interest of brevity, UST will, however, limit its recitation of discovery facts to the two specific discovery disputes at issue.[1] Notably, with respect to the two document requests at issue, Plaintiff has been aware since July 13, 2017 of UST's objections thereto. Yet, despite the fact that (1) discovery in this case, with limited exceptions, closed on November 30, 2017 (Docs. 91 & 94) and (2) the Second Amended Pretrial Scheduling Order provides that "the resolution of any outstanding discovery disputes" would be completed by January 31, 2018 (Doc. 94), Plaintiff failed to bring this matter to the Court's attention until now.

### 1.    Plaintiff's demand for each and every training material ever received by any UST student or employee ever involved in any sexual misconduct matter

Plaintiff's Request No. 13 to his First Request for Production of Documents and UST's July 13, 2017 response thereto were, in full, as follows:

**REQUEST NO. 13**: All documents including all agendas, written material, evaluations, assessments, videos concerning the training, certification or

---

[1] While Plaintiff implies throughout his motion papers that UST has been less than diligent in discovery, it is worthwhile to note that UST has produced 4,413 pages of documents as compared to Plaintiff's production of 165 pages. Grier Dec. ¶ 12.

3

guidance given to any Defendant employee, agent or student who was involved in any way in (a) the investigation, evaluation, prosecution, adjudication or appeal of the charge against John Doe (b) any other investigation, evaluation, prosecution, adjudication or appeal of any sexual misconduct matters.

**RESPONSE:** Defendant objects to this Request as overbroad, unduly burdensome, and on the grounds that it seeks documents not relevant to Plaintiff's remaining claim in this lawsuit to the extent it seeks each and every document, without limitation as to time, ever received by any employee of the University in connection with any training, certification, or guidance that they have received, attended, or participated in. Defendant further objects to this Request on the grounds that it seeks information not relevant to Plaintiff's sole remaining claim and not reasonably calculated to lead to the discovery of admissible evidence because Plaintiff's Complaint and responses to Defendant's discovery requests make no allegation with respect to the educational background or training of any of Defendant's administrators or employees involved in the investigation or adjudication of the complaint against John Doe. Defendant further refers Plaintiff to its Answer to Interrogatory No. 7.

Grier Dec., Ex. 1.

On October 2, 2017, counsel for Plaintiff sent a letter making a "renewed demand for" documents responsive to his Request No. 13. Grier Dec., Ex. 2. Plaintiff's letter did not provide a response to UST's objections to that request. *Id.* Thus, on October 4, 2017, counsel for UST responded to that renewed demand. Grier Dec., Ex. 3. As set forth in that letter, UST asked that Plaintiff, "[s]o that we can meet and confer in good faith, . . . provide an explanation as to why these Requests are (1) not overbroad, (2) not unduly burdensome, and (3) seek relevant and discoverable documents."

Following additional email exchanges, counsel for Plaintiff provided the alleged justification for the documents sought in his Request No. 13. Specifically, Plaintiff's counsel provided the following explanation as to the purported relevance and

4

discoverability of all training materials ever received by any UST student or employee ever involved in any sexual misconduct investigation:

> The Plaintiff alleges that the factfinders, and other individuals involved in the adjudication of allegations of sexual misconduct, were not properly trained. The failure by UST to properly train all of the individuals involved in the investigation and adjudication of sexual misconduct allegations on Defendant's campus violated the standard of care required when undertaking the investigation and adjudication of allegations of sexual misconduct. The failure to properly train, supervise and monitor the training and conduct of the individuals involved in the investigation and adjudication of the foregoing allegations was negligent and resulted in injury to Plaintiff.

Grier Dec., Ex. 4.

While maintaining its objections to Plaintiff's document requests, UST subsequently agreed to supplement its response to Plaintiff's Interrogatory 7 to provide additional information about training. That supplemental interrogatory response was extensive and provided, in addition to the list of internal trainings conducted at UST (which were provided in UST's original response), a list of external trainings attended for each individual involved in the investigation, adjudication, or appeal of the complaint against John Doe. Grier Dec., Ex. 5. In his motion, Plaintiff's counsel now complains that UST employees did not recall during their depositions the specifics of every training they ever attended. Pltfs. Br. at 7. However, Plaintiff's counsel inexplicably failed to provide this extensive discovery response to those employees to refresh their recollection. Grier Dec. ¶ 7. Additionally, and contrary to Plaintiff's assertion (*see* Pltfs. Br. at 8), the training presentation given to the appeal board panel just before their involvement in this case was produced in discovery. Grier Dec., Ex. 6.

Notably, despite UST's repeated and well-founded objections to its overbreadth Plaintiff never offered to narrow the scope of this document request. Grier Dec. ¶ 10. Instead, Plaintiff has simply demanded, without equivocation, that each and every document encompassed by that request be produced. *Id.*

### 2. Plaintiff's demand for the production of federally-protected information regarding non-party students

Plaintiff's Request No. 17 to his First Request for Production of Documents and UST's July 13, 2017 response thereto were, in full, as follows:

> **REQUEST NO. 17:** All documents concerning any investigation, evaluation, prosecution, adjudication, or appeal of a charge of sexual misconduct or similar offense made to the Defendant from August 1, 2005 to the present.

> **RESPONSE:** Defendant objects to this [request as] overbroad, unduly burdensome, and on the grounds that it seeks documents not relevant to any remaining claim or defense in this lawsuit as claims and investigations of claims of sexual misconduct against other students of Defendant have no bearing on (1) whether Defendant had a duty in tort to Plaintiff with respect to the complaint against him and the investigation of the complaint against him, (2) the scope of any such duty, or (3) whether any such duty was breached. Defendant further objects to this Request on the grounds that it seeks documents from confidential education records of students who are completely unrelated to this case and that such records are protected from disclosure by the Family Educational Rights and Privacy Act (FERPA).

Grier Dec., Ex. 1. As with its Request No. 13, Plaintiff's subsequent communications simply demanded production of all documents responsive to Request No. 17 without explanation as to (1) their relevance beyond Plaintiff's dismissed Title IX claims regarding alleged bias or discrimination "on the basis of sex," or (2) why FERPA did not preclude production. Grier Dec., Exhs. 2-4.

6

On March 7, 2018, counsel for UST and counsel for Plaintiff participated in a meet and confer telephone call. Grier Dec. ¶ 11. During the course of that call, counsel for UST inquired into whether Plaintiff would be amenable to UST providing him with general information that Plaintiff was hoping to obtain from the spreadsheet without disclosing personal identifying information of non-party students. *Id.* Plaintiff's counsel insisted upon the production of the entire unredacted spreadsheet. *Id.*

After reviewing Plaintiff's motion to compel, counsel for UST again reached out to counsel for Plaintiff with the following comment regarding a potential resolution to this discovery dispute:

> [W]ith respect to your motion to compel a spreadsheet that includes information about unrelated sexual misconduct complaints and investigations, when we spoke last week I asked if there was any way that we could agree to get you the information that you want from that spreadsheet without disclosing the names of non-party students involved. It appears from your motion and from the case that you cite therein that you are now seeking the production of something less than the entire unredacted spreadsheet. It would seem to me, then, that we may be able to resolve this without the need for a motion.

Grier Dec., Ex. 7. Counsel for Plaintiff never responded but instead contacted the Court to initiate the informal dispute resolution process.

## ARGUMENT

## I.  PLAINTIFF'S MOTION TO COMPEL EACH AND EVERY TRAINING MATERIAL EVER RECEIVED BY ANY UST STUDENT OR EMPLOYEE EVER INVOLVED IN A SEXUAL MISCONDUCT INVESTIGATION MUST BE DENIED

Plaintiff's motion to compel the production of all training materials received by any and all UST students and employees ever involved in a sexual misconduct

7

investigation should be denied. Fatally, Plaintiff has not made the "threshold showing of relevance" as is required "before parties are required to open wide the doors of discovery." *Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 237 (D. Minn. 2013) (quoting *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)). "[C]ourts have repeatedly held that the price of entry *even to discovery*, is for the plaintiff to allege a *factual* predicate concrete enough to warrant further proceedings, which may be costly and burdensome." *In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*, MDL 08-cv-1905 (RHK/JSM), 2009 WL 294353, at *2 (D. Minn. Feb. 5, 2009) (citations and quotations omitted, italics in original). And, following the amendment to Fed. R. Civ. P. 26(b)(1) on December 1, 2015, "[n]o longer is it good enough to hope that the information sought might lead to the discovery of admissible evidence. In fact, the old language to that effect is gone." *Gilead Sciences, Inc. v. Merck & Co., Inc.*, No. 5:13-CV-04057-BLF, 2016 WL 146574, at *1 (N.D. Cal. Jan. 13, 2016). Indeed, the party seeking to compel discovery must demonstrate not only that the discovery sought is relevant, but that it is "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). And, "[w]hile the standard of relevance in the context of discovery is broader than in the context of admissibility . . . this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992).

Plaintiff's demand that UST produce each and every training material ever received by any student or employee ever involved in a sexual misconduct investigation is nothing more than a fishing expedition. Indeed, this is demonstrated by Plaintiff's own

motion papers. While Plaintiff's justification for his demand for these documents during the course of discovery was his purported allegation that the factfinders and others involved in this case "were not properly trained" (Grier Dec., Ex. 4), Plaintiff's Amended Complaint contains no such allegation. *See generally* Doc. 34. Furthermore, following receipt of UST's supplemental response to Interrogatory No. 7 (which set forth the extensive training received by the relevant individuals in this case), Plaintiff's justification for his demand shifted. Now, more than three and a half months after the close of discovery, Plaintiff asks this Court to compel the production of this extensively broad category of documents because they "may go to show an institutional bias that violates the duty of care Defendant owes to Plaintiff and explains or leads to other discoverable evidence of why defendant failed to fulfill the terms and conditions of its own Sexual Misconduct Policy and Procedures." Pltfs. Br. at 9. In other words, Plaintiff asks this Court to allow him to comb through every document ever received at a training by any UST student or employee ever involved in a sexual misconduct investigation in the hopes he can find some sentence or document to rely upon in concocting a case for "institutional bias."

Plaintiff's newly-devised justification for his demand fairs no better in establishing the relevance of the documents that he asks this Court to compel as claims related to alleged institutional bias and discrimination "on the basis of sex" were dismissed on March 1, 2017. Plaintiff cannot now be permitted to use the discovery process (three and a half months after the close of discovery) in a last-ditch effort to resurrect these dismissed claims. The only questions remaining in this case are (1) whether Defendant

had a duty in tort to Plaintiff with respect to the complaint against him and the investigation of the complaint against him, (2) the scope of any such duty, and (3) whether any such duty was breached. Plaintiff has made no showing as to how each and every training material ever received by any student or employee of UST ever involved in a sexual misconduct investigation are in any way relevant to these questions.

Finally, even if Plaintiff had made his required showing of relevance (which he has not), the overbreadth of Plaintiff's request demonstrates its disproportionality to the needs of this case. Indeed, Plaintiff's request for training materials applies, without limitation as to time, to each and every UST student and employee ever involved in a sexual misconduct investigation, the collection of which would take hundreds of hours and significant attorneys' fees. As a proportional compromise, UST provided Plaintiff with an extensive list of internal trainings conducted at UST and external trainings attended by those UST employees involved in the investigation, adjudication, and appeal of the sexual misconduct complaint made against Plaintiff. That Plaintiff's counsel chose not to use this list in his depositions of those individuals does not justify granting his motion to compel.

Despite its objections to relevancy, UST provided to Plaintiff in discovery significant information regarding the training of those individuals involved in the investigation, adjudication, and appeal of the sexual misconduct complaint made against Plaintiff. While Plaintiff now insists that the information provided is not sufficient, he was (1) aware of UST's objections as of July 13, 2017, (2) aware of the November 30, 2017 close of discovery, and (3) aware of the Second Amended Scheduling Order, which

10

provides that "the resolution of any outstanding discovery disputes" would be completed by January 31, 2018 (Doc. 94). Plaintiff failed to bring this issue to the Court's attention until now, and his request at this late stage for the production of these irrelevant materials should be denied.

## II.   PLAINTIFF'S MOTION TO COMPEL FEDERALLY-PROTECTED INFORMATION REGARDING NON-PARTY STUDENTS MUST BE DENIED

Among other things, the Family Educational Rights and Privacy Act (FERPA) prohibits the "release of education records (or personally identifiable information contained therein other than directory information, as defined in paragraph (5) of subsection (a)) of students without the written consent of their parents to any individual, agency, or organization . . .." 10 U.S.C. § 1232(b)(1); *see also U.S. v. Miami Univ.*, 91 F. Supp. 2d 1132, 1145 (S.D. Ohio 2000) ("FERPA imposes a direct obligation on universities not to disclose 'educational records.'"). "The purpose of FERPA is: (1) to create a right of access to student records for parents and students; and (2) to protect the privacy of those records by preventing unauthorized access by third parties." *Id.* at 1140 (citing 120 Cong. Rec. 39,858, 39,862-39,863 (Dec. 13, 1074); 121 Cong. Rec. 7974 (May 13, 1975)).

Plaintiff asks this Court to disregard FERPA and the purpose therefore and to issue an Order requiring UST to disclose to Plaintiff's counsel the "educational records" of non-party students (and, necessarily, to undertake the massive task of giving notice to each and every such student). Plaintiff's justification for this request is two-fold. First, Plaintiff argues that this information is relevant because he has argued that:

Defendant's investigation and adjudication of the allegations of sexual misconduct against Plaintiff were not free from bias, failed to comport with basic procedural fairness, and were arbitrary . . . [and that] [t]he documents Request 17 calls for will . . . show a larger picture of Defendant's historical application of its Sexual Misconduct Policy and Procedures and allow Plaintiff to further explore the extent of the duty of care Defendant assumed.

Pltfs. Br. at 10. Second, Plaintiff cites to a ruling in *Doe v. Trustees of Boston College* requiring the disclosure of certain information regarding previous sexual misconduct investigations. Pltfs. Br. at 14. There are, however, two critical problems with Plaintiff's arguments.

First, the entire holding of the court in *Trustees of Boston College* was as follows:

Having balanced all of the relevant factors (including, but not limited to, the foregoing factors) in determining whether the requested information is relevant to plaintiff's claims and proportional to the needs of this case, defendant is ordered to produce any statements indicative of gender bias, including statements indicative of a motivation of a chauvinistic view of the sexes, *see Bleiler v. College of Holy Cross*, 2013 WL 4714340, at *5 (D.Mass. Aug. 26, 2013), *appeal dismissed*, No. 13-2245 (1st Cir. April 8, 2015): (1) made by one or more of the decision makers on plaintiff's disciplinary tribunal during the past four years that is contained in the documents requested in document request number 26 ("the requested documents"); or (2) made by any Boston College official in a position to influence a decision maker on plaintiff's disciplinary tribunal during the past four years that is contained in the requested documents. For complaints of sexual assault or misconduct made by a student in the last three years, defendant is further ordered to identify the gender of each Boston College student against whom the complaint of sexual assault or misconduct was made, the finding on the complaint and the sanction or discipline imposed. Prior to disclosure of any part of a non-party student's educational record, defendant shall make a reasonable effort to notify the parent or non-party student whose record may be disclosed. Boston College may also redact personally identifiable information. *See* 20 U.S.C. § 1232g(b)(2); 34 C.F.R. § 99.31(9). The production of any part of a non-party student's educational record, *see* 20 U.S.C. § 1232g(a)(4), shall be subject to a protective order and the parties shall confer and attempt to agree upon such a protective order.

*Doe v. Trustees of Boston Coll.*, Civ. No. 15-10790, 2015 WL 9048225 at *1 (D. Mass. Dec. 16, 2015) (emphasis added). In other words, the court required Boston College to provide general and non-identifying information regarding previous investigations.[2] That court simply did not order, as Plaintiff asks the Court to do here, the College to produce a document identifying each and every complainant and respondent in unrelated sexual misconduct cases. Indeed, counsel for UST inquired into whether relief such as that fashioned by the court in Boston College could be agreed upon by the parties but counsel for Plaintiff refused any such compromise. Grier Dec. ¶ 11. *Trustees of Boston College* simply does not justify the disclosure that Plaintiff seeks here – namely, the unredacted production of a highly-sensitive and confidential document that includes the personal identifying information of complainants and respondents in unrelated sexual misconduct cases. UST's concerns over producing this irrelevant information were proven justified just last week when counsel for Plaintiff publicly filed, for the second time in this case, documents and communications that included the personal information of non-party students.

Second, at the time the order cited by Plaintiff was made in *Trustees of Boston College*, that case still included Title IX claims. *See Trustees of Boston College*, 2015 WL 9048225 at *1 ("The relevant factors under the amended rule [26(b)] vis-à -vis this case include the importance of the requested information to resolve the causal connection in the gender bias claims under Title IX" (emphasis added)). Following the Court's

---

[2] Namely, "the gender of each Boston College student against whom the complaint of sexual assault or misconduct was made, the finding on the complaint and the sanction or discipline imposed." *Trustees of Boston College*, 2015 WL 9048225 at *1.

March 1, 2017 Order dismissing Plaintiff's Title IX claims, there is no such corresponding justification for the disclosure of the information sought by Plaintiff. The outcome of unrelated sexual misconduct investigations simply has no bearing on (1) whether Defendant had a duty in tort to Plaintiff with respect to the complaint against him and the investigation of the complaint against him, (2) the scope of any such duty, or (3) whether any such duty was breached. Weighing the privacy interests of these non-party students against the non-relevance of the requested documents to the limited issues left in this case, Plaintiff's motion to compel must be denied.[3]

### III. UST IS ENTITLED TO RECOVER THE FEES INCURRED RESPONDING TO PLAINTIFF'S MOTION

Fed. R. Civ. P. 37(a)(5)(B) provides that if a motion to compel is denied the Court

must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or the deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees.   But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

For the reasons set forth above, Plaintiff's motion to compel the production of these irrelevant documents was not substantially justified. UST should, therefore, be awarded the attorneys' fees and costs it incurred in responding.

---

[3] Given the irrelevance of the information sought by Plaintiff, his motion to compel documents responsive to Request No. 17 should be denied in its entirety. In the alternative, this Court should fashion its order to prevent the disclosure of the personal identifying information of non-party students.

14

## <u>CONCLUSION</u>

UST respectfully requests that this Court deny Plaintiff's motion in its entirety and award UST its costs and fees incurred in responding to that motion.

Dated:  April 11, 2018

**BRIGGS AND MORGAN, P.A.**

By:  */s/ Maren F. Grier*
    David A. Schooler (#0225782)
    Ellen A. Brinkman (#0386578)
    Maren F. Grier (#0390221)
2200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota  55402-2157
(612) 977-8400
dschooler@briggs.com
ebrinkman@briggs.com
mgrier@briggs.com

**ATTORNEYS FOR DEFENDANT
UNIVERSITY OF ST. THOMAS**

10611508v2