UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JOHN DOE,                                          CIVIL NO. 16-1127 (JRT/DTS)

      Plaintiff,

v.                                                 <u>ORDER</u>

UNIVERSITY OF ST. THOMAS,

      Defendant.

## INTRODUCTION

Plaintiff John Doe ("Plaintiff") claims the University of St. Thomas ("UST") discriminated against him in its investigation of a fellow student's complaint that he had sexually assaulted her.  He now moves to amend his complaint to reallege a previously dismissed "erroneous outcome" claim under Title IX.  But there is no new evidence to make that claim more viable now than when it was originally dismissed.  Accordingly, because the amendment would be futile, the motion to amend is denied.

Plaintiff has also moved to depose the female student ("Jane Doe") who accused him of assaulting her.  The Court previously quashed a subpoena for her deposition. Nothing in the record has changed to convince this Court to reverse its prior order. Accordingly, this motion too is denied.

## BACKGROUND

This case arises out of a sexual encounter between two freshman students at UST.  Complaint, Docket No. 1.  The female student, Jane Doe, filed a complaint against Plaintiff alleging sexual assault.  *Id.*  UST investigated the complaint and found that Plaintiff had violated its sexual misconduct policy, resulting in discipline imposed on Plaintiff.  *Id.* ¶1.  Plaintiff claims the encounter was consensual and that UST's investigation was biased and unfair and resulted in a flawed and erroneous outcome.

*Id.* He sued UST raising claims under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-85, breach of contract, breach of the covenant of good faith and fair dealing, and negligence.   On June 6, 2016, UST moved to dismiss the action under Fed. R. Civ. P. 12(b)(6), which motion was granted except as to the negligence claim. Motion, Docket No. 43; Order, Docket No. 63.  Jane Doe has never been a party to this litigation.

During the course of discovery, Plaintiff subpoenaed Jane Doe for a deposition. Motion to Quash, Docket No. 71.  By Order dated August 21, 2017, this Court quashed the deposition of Jane Doe on grounds that her deposition testimony, even if marginally relevant to the issues in this litigation, imposed a disproportionate burden on her. Order, Docket No. 89.  Plaintiff also moved to compel UST to produce training materials that UST disseminated to its fact-finding panels who investigated sexual assault claims. Motion to Compel Discovery, Docket No. 95.  That motion was granted, and the training materials were produced.  Minute Entry, Docket No. 125.

Plaintiff now moves to amend his complaint to reallege his previously dismissed Title IX erroneous outcome claim and also moves, once again, to take the deposition of Jane Doe.

## ANALYSIS

### I.    Motion to Amend

Under Fed. R. Civ. Proc. 15, a motion to amend the complaint may be denied if the amendment would be futile.  Thus, the amendment may be denied if the claim

created by the amendment would be unable to withstand a motion to dismiss. *Ulrich v. City of Crosby*, 848 F.Supp. 861, 877 (D. Minn. 1994).[1]

In order, therefore, to succeed on the motion to amend, Plaintiff must demonstrate that the proposed amendment passes muster under the now familiar *Twombly/Iqbal* standard. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under that standard, Plaintiff's amendment must allege factual allegations sufficient to raise a right to relief above the speculative level that is not merely possible, but plausible. *Twombly,* 550 U.S. at 555-56; *Iqbal,* 556 U.S. at 678-79.

In order to prevail on an erroneous outcome claim under Title IX, Plaintiff must plead facts (1) sufficient to cast doubt on the accuracy of the outcome of the proceeding, and (2) sufficient to demonstrate that the flawed outcome was "because of" gender bias. *Yusuf v. Vassar College*, 35 F.3d 709, 715-16 (2d Cir. 1994). The causation prong of this test requires that Plaintiff demonstrate more than that gender bias was a "motivating factor" behind the alleged erroneous outcome but was in fact a "but for" cause of the allegedly erroneous outcome.[2]

---

[1]     Plaintiff's Motion to Amend is beyond the deadlines set in this Court's Scheduling Order. UST has urged this Court to deny the motion to amend under Rule 16(b) because Plaintiff has not been able to demonstrate good cause to modify the scheduling order. However, Plaintiff asserts the Motion to Amend is based, at least in part, on documents that were produced to him only recently and that therefore good cause exists to modify the scheduling order. This Court will reach the merits of this motion.

[2]     Though several courts have discussed the erroneous outcome test in terms of "motivating factor," this interpretation appears to be based upon comparison of Title IX to current language contained in 42 U.S.C. § 2000e-2 of Title VII of the Civil Rights Act of 1964. As explained by the Supreme Court, absent similar statutory language or clear legislative intent, a statute prohibiting discrimination "because of" a trait must be interpreted to require "but for" causation. *See, e.g., Gross v. FBL Financial Services,*

In support of element one (flawed outcome of the proceedings), Plaintiff alleges generally that the fact finders assigned to his case ignored Jane Doe's "frequent and varied untruths throughout the investigation" and treated Plaintiff and Jane Doe very differently during their questioning.  But Plaintiff cannot establish a flawed outcome because his own statements provided a basis on which the fact finders could reasonably have determined that he violated UST's sexual misconduct policy.  Report at 25-6, Docket No. 221.

More importantly, however, Plaintiff's proposed amendment utterly fails on grounds of causation.  In support of causation, Plaintiff has identified the following facts:

- That UST's Associate General Counsel stated that she was not surprised the Ramsey County Attorney's Office had declined to prosecute plaintiff because prosecution was "always" declined in cases like this.  (Amended Complaint ¶ 130).

- That UST informed Plaintiff's counsel that Plaintiff could make things easier for everyone and receive a tuition refund if he just withdrew from UST (Amended Complaint ¶ 145).

- The difference in the manner in which unidentified medical professionals were questioned regarding Plaintiff and Jane Doe (Amended Complaint ¶¶ 149-50).

- The difference in the manner in which Plaintiff was repeatedly and aggressively challenged by UST officials regarding his version of the events, whereas Jane Doe was never similarly challenged despite giving at least five varying versions of the events (Amended Complaint ¶ 151).

- That Associate General Counsel, Abigail Crouse, improperly operated in the role of both the Title IX Coordinator and General Counsel (Amended Complaint ¶¶ 181, 183 and 184).

Pl. Mem. 14-15, Docket No. 185

---

*Inc.,* 557 U.S. 167, 176-77 (2009); *University of Texas Southwest Medical Center v. Nassar*, 570 U.S. 338, 347 (2013).

These allegations are virtually identical to the prior factual allegations raised in Plaintiff's initial Complaint which this Court found insufficient to establish gender bias so as to withstand the motion to dismiss (Order at 11-12, Docket No. 63).

The only new evidence discovered since the Order dismissing the erroneous outcome claim relates to UST's training materials.  But the training materials upon which Plaintiff relies are also insufficient to establish gender bias causing an erroneous or flawed outcome.

Plaintiff's new evidence falls broadly into three categories:

(1)     Training documents and videos providing hypotheticals and case studies which typically, though not uniformly, refer to victims using female pronouns or proper names and perpetrators using male pronouns or proper names;

(2)     Training documents that reference statistics on the frequency of sexual assaults perpetrated on women and on men, and the frequency of such assaults that are perpetrated by men; and

(3)     Training materials which reference the Obama administration's efforts to combat sexual violence against women on college campuses.

Pl. Mem. 16-20, Docket No. 185.

Plaintiff argues these training materials created an institutional bias on the part of UST fact finders to find Jane Doe inherently credible and to find Plaintiff not credible. *Id.*  But this argument fails for several reasons.  First, the statistics merely reflect reality – that women are more likely to be victims of sexual assault than are men (but not to the exclusion of men), and that men are more likely than women to perpetrate sexual assault (but again, not to the exclusion of women).  The prevalence of the use of female names and pronouns to describe victims and male names and pronouns to describe perpetrators merely reflects these unpleasant statistics.  These same training materials

also expressly cautioned investigators to be careful, thoughtful and fair.  McGraw Decl. Exs. 14-15, Docket Nos. 195-96.

As for the training materials' reference to the Obama Administration's efforts to combat sexual violence against women on campus, this Court previously required Plaintiff to show targeted stress brought to bear on UST specifically.  *Id.* at 14.  While the training materials reference the "pressure" brought to bear on universities in general, they fall far short of establishing that the federal government applied any pressure or stress on UST specifically.  The mere fact that UST revised its policies shortly after the White House had issued its "Not Alone" report, and after UST had created an in-house presentation summarizing that report, does not demonstrate targeted stress sufficient to raise a plausible inference of gender bias in UST's investigation of this incident.  Thus, the training materials do not establish a plausible claim that UST's training created an institutional bias against males accused of violating the sexual misconduct policy, much less that the investigators in this case found Plaintiff had violated the policy because of that bias.  The training materials are no different than the prior evidence and allegations that this Court found insufficient.  *See generally* Order, Docket No. 63.

Plaintiff's motion to amend must be denied because it relies on allegations already found insufficient to support such a claim and because the new evidence on which it is premised is likewise insufficient.

## II.   Motion to Compel Deposition of Jane Doe

In addition to seeking to amend his complaint, Plaintiff revisits the question of whether he may depose Jane Doe.  Plaintiff makes three arguments.  First, he suggests that Jane Doe might possibly recant her prior accusation which, were that to happen, would support his (proposed) erroneous outcome claim.  This argument puts the cart

before the horse.   Plaintiff has not produced evidence sufficient to raise a viable erroneous outcome claim in the first instance.   Jane Doe's deposition was previously quashed because the burden it would impose on her exceeded the relevance – if any – to the claims then in this case.   That is still true.   Speculation that her testimony might support an otherwise dismissed claim that is not presently in the case does not alter this analysis.

Second, Plaintiff argues that Jane Doe's testimony is necessary to fully assess whether UST's investigation was conducted in a negligent manner.   He suggests Jane Doe may testify that she did not make statements attributed to her by investigators in their report.   But Plaintiff has already deposed the investigators and has had full access to all persons who conducted the investigation he claims was flawed.   Nothing has changed in the facts discovered to alter this Court's prior ruling – which was consistent with existing precedent - quashing Jane Doe's deposition. *See Gomes v. Univ. of Maine Sys.,* 365 F. Supp. 2d 6, 14 (D. Maine 2005); *Yu v. Vassar Coll.,* 97 F. Supp. 3d 448, 461 (S.D.N.Y. 2015).

Finally, Plaintiff argues that the door has been opened to this deposition because Plaintiff was questioned during his deposition as to the underlying facts of the sexual encounter that gave rise to his discipline.   Therefore, he argues, he should be allowed to depose Jane Doe as to her version of events on the night of December 11, 2015.   This argument fails at the outset.   First, the Court has reviewed the excerpts from the deposition of Plaintiff and finds that the questioning regarding the facts of the underlying incident was not nearly so in-depth as to "open the door" to revisiting UST's disciplinary findings (which is beyond the scope of this case in any event).   More importantly, Plaintiff is in a materially different circumstance than Jane Doe.   Unlike Plaintiff, Jane

Doe is not a party to this lawsuit.  Unlike Plaintiff, Jane Doe did not put anything at issue here.  Thus, even if the "door has been opened" Jane Doe did not open it and it is Jane Doe's rights, not UST's that lie at the heart of this deposition issue.  Plaintiff has not demonstrated a basis for this Court to reverse its earlier decision prohibiting the deposition of Jane Doe.

### CONCLUSION

For all the foregoing reasons, IT IS HEREBY ORDERED that:

1.      Plaintiff's Motion to Compel the Deposition of Jane Doe [Docket No. 141] is DENIED; and

2.      Plaintiff's Motion Seeking Leave to Amend Pleadings [Docket No. 182] is DENIED.

Dated:      August 6, 2018

*s/ David T. Schultz*
DAVID T. SCHULTZ
United States Magistrate Judge